IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL G.,[1]

Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY ADMINISTRATION,

Defendant.

Case No. 6:25-cv-01904-SB

**OPINION AND ORDER**

**BECKERMAN, U.S. Magistrate Judge.**

Michael G. ("Plaintiff") filed this appeal challenging the Commissioner of the Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). For the reasons explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence.

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party.

## STANDARD OF REVIEW

"As with other agency decisions, federal court review of social security determinations is limited." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014). A federal court's review is limited because "[f]or highly fact-intensive individualized determinations like a claimant's entitlement to disability benefits, Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency." *Id.* (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966)). Adhering to this principle, courts "follow three important rules" in reviewing social security determinations. *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).

First, courts "leave it to the [agency] to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." *Id.* (quoting *Treichler*, 775 F.3d at 1098). Second, courts "will 'disturb the Commissioner's decision to deny benefits only if it is not supported by substantial evidence or is based on legal error.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098). Third, if the agency "'commits legal error, [courts] uphold the decision where that error is harmless,' meaning that 'it is inconsequential to the ultimate nondisability determination,' or that, despite the legal error, 'the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity.'" *Id.* (quoting *Treichler*, 775 F.3d at 1098); *see also Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021) ("And even where this modest [substantial evidence] burden is not met, [courts] will not reverse an [agency] decision where the error was harmless." (citing *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by regulation as recognized in Farlow v. Kijakazi*, 53 F.4th 485, 487 (9th Cir. 2022))).

///

## BACKGROUND

### I. PLAINTIFF'S APPLICATION

Plaintiff was born in January 1983, making him thirty-five years old on October 11, 2018, his amended alleged disability onset date.[2] (Tr. 16, 23, 35, 635.) Plaintiff has completed two years of college and worked as a medical lab technician and cable service sales representative. (*Id.* at 23, 50-51, 83, 199, 4362.) In his DIB application, Plaintiff alleges disability due to anxiety, depression, posttraumatic stress disorder ("PTSD"), insomnia, and herniated discs. (*Id.* at 75.)

The Commissioner denied Plaintiff's application initially and upon reconsideration, and on November 7, 2022, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (*Id.* at 16.) Plaintiff and an impartial vocational expert ("VE") testified at a telephonic hearing before an ALJ on August 3, 2025. (*Id.* at 33-55.) Later that month, on August 22, 2023, the ALJ issued a decision denying Plaintiff's application. (*Id.* at 16-25.) The Appeals Council denied Plaintiff's request for review on October 6, 2023, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 1-6.) Plaintiff then sought judicial review of that decision.

On September 19, 2024, this Court granted the parties' stipulated motion to reverse the Commissioner's decision and remand for further administrative proceedings. (*Id.* at 4417-18, 4420-28.) The Court entered judgment that same day and the Appeals Council issued a remand

[2] "[T]o be eligible for DIB, a claimant must prove continuous disability that began on or before the date last insured[.]" *Hasji v. Kijakazi*, No. 21-15319, 2023 WL 6458648, at *1 (9th Cir. Oct. 4, 2023) (first citing 42 U.S.C. § 423(a)(1)(A), (c)(1); then citing 20 C.F.R. § 404.131; and then citing *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1459 (9th Cir. 1995)); *see also Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984) (per curiam) ("[O]nly disabilities existing before that time can trigger [a claimant's entitlement to disability] insurance benefits.") (citation omitted). Thus, to be eligible for DIB, Plaintiff must prove that he suffered from a continuous disability that began on or before his date last insured of March 31, 2022. (Tr. 4394-95.)

order on October 16, 2024. (*Id.* at 4419, 4429-35.) After Plaintiff and a VE appeared and testified at a second hearing before the same ALJ, the ALJ issued a new decision on August 6, 2025, once again denying Plaintiff's DIB application. (*Id.* at 4353-64, 4374-89.) Plaintiff then filed this appeal.

## II. THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citation omitted). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

To establish a "prima facie case of a disability," a claimant must demonstrate "at steps one through four of the sequential evaluation process that she suffers from a severe impairment that prevents her from doing any work she has done in the past, or that she has a severe impairment and has no relevant past work[.]" *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). If the claimant does so, "[t]he burden then shifts to the Commissioner at step five to establish that the claimant can perform a 'significant number[]' of jobs in the national economy given the claimant's physical and mental limitations, age, education, and work experience." *Id.* (first quoting 20 C.F.R. § 416.960(c)(2);

and then citing *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)). "If the Commissioner meets [his] burden, the claimant has failed to establish disability." *Thomas*, 278 F.3d at 955 (citation modified).

**III. THE ALJ'S DECISION**

The ALJ applied the sequential evaluation process to determine if Plaintiff is disabled. (Tr. 4353-64.) At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity during the relevant period of April 15, 2016 through March 31, 2022 (i.e., Plaintiff's initial alleged disability onset date and date last insured). (*Id.* at 4356.) At step two, the ALJ found that Plaintiff suffered from the severe impairments of obesity, degenerative disc disease of the lumbar spine, bilateral shoulder tendinitis and instability, major depressive disorder, anxiety, PTSD, and methamphetamine and cannabis dependence. (*Id.*) At step three, the ALJ concluded that Plaintiff did not have an impairment that met or equaled a listing. (*Id.* at 4356-57.)

The ALJ then found that Plaintiff had the residual functional capacity ("RFC") to perform "light work," subject to these limitations: (1) Plaintiff can occasionally crawl, reach overhead bilaterally, and climb ladders, ropes, and scaffolds, (2) Plaintiff can understand, remember, and carry out simple instructions and make simple work-related decision, (3) Plaintiff can adjust to occasional changes in the work setting, (4) Plaintiff "can perform tasks that do not involve a specific production-rate pace such as assembly-line work or an hourly production quota," and (5) Plaintiff cannot interact with the general public but he can occasionally interact with supervisors and co-workers. (*Id.* at 4358.) At step four, the ALJ concluded that Plaintiff had no past relevant work experience. (*Id.* at 4362.) Finally, at step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy

that he could perform, including work as a marker, collator operator, and router. (Tr. 4362, 4383-84.)

## DISCUSSION

In this appeal, Plaintiff argues that the ALJ erred in two principal ways. First, Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons for discounting his symptom testimony. (Pl.'s Opening Br. at 4-15, ECF No. 9.) Second, Plaintiff argues that the ALJ erred by failing to provide legally sufficient explanations for declining fully to credit the opinions of the state agency psychological consultant, Irmgard Friedburg, Ph.D. ("Dr. Friedburg"), and his treating physician, Therese Santana, M.D. ("Dr. Santana"). (*Id.* at 16-19.) Emphasizing that the ALJ made "essentially the same errors" here as he did in his first decision, Plaintiff argues that the appropriate remedy on remand is an award of benefits, not a "third opportunity to consider the same evidence." (*Id.* at 4, 19-20; Pl.'s Reply Br. at 8, ECF No. 14.)

The Commissioner acknowledges that the ALJ erred in discounting Drs. Friedburg and Santana's opinions and, in doing so, failed to comply with the Appeals Council's remand order and revised regulations. (Def.'s Br. & Req. Remand ("Def.'s Br.") at 1, 3-7, ECF No. 13.) The Commissioner, however, argues that the ALJ properly discounted Plaintiff's symptom testimony. (*Id.* at 7-11.) For that reason and others, the Commissioner argues that further proceedings are necessary here. (*Id.*)

### I. PLAINTIFF'S SYMPTOM TESTIMONY

#### A. Applicable Law

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited[.]" *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective

medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007)). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if she gives specific, clear and convincing reasons for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation modified).

**B. Analysis**

There is no evidence of malingering here and the ALJ determined that Plaintiff provided objective medical evidence of underlying impairments which might reasonably produce the symptoms alleged. (*See* Tr. 4359, demonstrating that the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms"). The ALJ was therefore required to provide clear and convincing reasons for discounting Plaintiff's testimony. *See Ghanim*, 763 F.3d at 1163. The Court concludes that the ALJ satisfied that standard.

**1. Preliminary Considerations**

"[T]he 'clear and convincing' standard requires an ALJ to show his work[.]" *Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) (quoting *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021)). That "assure[s a] reviewing court that [the ALJ] did not arbitrarily discredit [the claimant's] testimony." *Cope v. Bisignano*, No. 25-2337, 2026 WL 1134289, at *1 (9th Cir. Apr. 27, 2026) (citation modified). Satisfying this standard turns on "whether the ALJ's rationale is clear enough that it has the power to convince," not on "whether [the] court is convinced[.]" *Smartt*, 53 F.4th at 499.

///

In evaluating the sufficiency of the ALJ's rationale, a court may not "'second-guess' an ALJ's reasonable interpretation of a claimant's testimony." *Id.* at 500 (first quoting *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); and then citing *Thomas*, 278 F.3d at 959); *see also Treichler*, 775 F.3d at 1098 ("[Courts] leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.") (citation modified). A court must instead ask whether the ALJ's rationale for discounting the claimant's testimony is supported by "substantial evidence in the record as a whole"; that is, "more than a mere scintilla" of evidence, which is "not [a] high" evidentiary threshold and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Ahearn*, 988 F.3d at 1115 (quoting *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019)); *cf. Chen v. Bisignano*, No. 25-3588, 2026 WL 1427028, at *1-2 (9th Cir. May 21, 2026) ("Substantial evidence requires 'more than a mere scintilla' of evidence but does not require more than 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion' when considering the entire record. . . . The ample record evidence relied on by the ALJ is 'more than a mere scintilla' of evidence to support his decision to discount [the claimant's] subjective symptom testimony." (quoting *Biestek*, 587 U.S. at 103)).

Before turning to the clear and convincing reasons that the ALJ provided, it is important to consider that the ALJ "did not fully discount" Plaintiff's testimony and instead formulated an RFC that accounted for Plaintiff's mental and physical impairments. *See Morrow v. Bisignano*, No. 24-3711, 2025 WL 1924900, at *2 (9th Cir. July 14, 2025) ("Notably, the ALJ recognized that [the claimant] does have limitations in his ability to stand, walk, and sit, which the ALJ incorporated into his [RFC] . . . . But the ALJ ultimately determined that . . . greater limitations

were inconsistent with the foregoing examination findings in [his] medical records. That rationale is clear enough that it has the power to convince[.]") (citation modified).

With respect to Plaintiff's physical impairments, the ALJ explained that he declined fully to credit but nevertheless "considered [Plaintiff's symptom] testimony regarding pain and discomfort" in formulating Plaintiff's RFC. (Tr. 4359.) The ALJ, for example, noted that Plaintiff not only "complain[ed] of chronic back pain" and "chronic [shoulder] pain and numbness," but also presented consistent "radiological evidence" and "medical imaging." (*Id.* at 4359-60.) Such evidence "reasonably support[ed] certain physical [RFC] limitations" related to Plaintiff's back and "suggest[ed] heavy exertion would likely aggravate his [shoulder] symptoms," making it "reasonable to restrict the exertional demands placed on [him] . . . in an employment setting." (*Id.*)

With respect to Plaintiff's mental impairments, the ALJ acknowledged that Plaintiff "consistently reported problems with irritability, with trusting others, and being frustrated by [individuals he perceived] as lack[ing] integrity, including co-workers." (*Id.* at 4360.) Despite finding that the record detracted from the allegedly severity of these problems, the ALJ found that the record supported formulating an RFC that would "reduc[e] the number of opportunities to interact inappropriately" with others and would in turn "help ensure sustained employment." (*Id.* at 4361.)

Thus, although the Court concludes below that the ALJ provided clear and convincing reasons to discount Plaintiff's testimony, the Court highlights at the outset that the ALJ did not fully discount Plaintiff's testimony. *See Burns v. Bisignano*, No. 24-4199, 2025 WL 1937448, at *2 (9th Cir. July 15, 2025) ("Notably, the ALJ did not fully discount [the claimant's] testimony and accounted for her physical and mental limitations in the RFC determination.") (citation

modified); *Austin v. Dudek*, No. 23-3602, 2025 WL 957499, at *1-2 (9th Cir. Mar. 31, 2025) ("In addition, the ALJ considered [the claimant's] alleged impairments, incorporating several 'precautionary' measures in the [RFC] determination . . . , even where there was limited or conflicting evidence.").

**2. Reported Activities**

To the extent the ALJ declined fully to credit Plaintiff's symptom testimony, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for doing so.

It is well settled that an ALJ may discount a claimant's symptom testimony based on an inconsistency between his claimed limitations and reported activities. In *Burrell v. Colvin*, 775 F.3d 1133, 1137-38 (9th Cir. 2014), the Ninth Circuit held that "[i]nconsistencies between a claimant's testimony and the claimant's reported activities provide a valid reason for an adverse credibility determination." *Id.* (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)); *see also Garrison*, 759 F.3d at 1016 (noting that if a claimant's "level of activity" is "inconsistent with [his] claimed limitations," an ALJ may discount the claimant's testimony based on his reported "activities") (citation modified); *Ghanim*, 763 F.3d at 1165 ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination." (first citing *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); and then citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1196 (9th Cir. 2004))).

In this case, the ALJ discounted Plaintiff's testimony because he reported engaging in activities incompatible with his claimed limitations. (Tr. 4359-60.) Before making this finding, the ALJ noted that Plaintiff completed an adult function report on March 9, 2021, in which he described his daily hobbies and interests as watching television and playing video games and reported that his "back and joint pain made it difficult to sit or stand for prolonged periods,"

stated that he "used to engage in sports, camping, and power lifting," and "lamented that he now typically just watches television and plays video games." (*Id.* at 4359, citing Ex. 3E at 1, 5, i.e., Tr. 207, 211; *see also id.* at 207, 211, reflecting that in his adult function report, Plaintiff represented that he was "unable to sit or stand for longer periods of time than an hour," his physical "conditions also limit[ed] the amount of weight [he] can lift to between [five] and [thirty] pounds," his daily hobbies and interests consisted of watching television and playing video games, and he "use[d] to play sports[, p]owerlift[,] work graveyard shift[, and g]o camping").

Having detailed the alleged severity of Plaintiff's symptoms, the ALJ turned to and partially discounted his testimony because it conflicted with his reported activities, such as "exercising regularly," "pursuing 'out of the house activities,'" "coaching during football season," "work[ing] out [two to four] times a week performing fast-paced weightlifting," and "taking a job as a personal trainer at a local gym." (*Id.* at 4350, first quoting Ex. 3F at 247; then citing Ex. 3F at 239; and then citing Ex. 5F at 55, i.e., Tr. 540, 546.) Substantial evidence supports the ALJ's discounting of Plaintiff's testimony based on his activities. *See Armes v. Bisignano*, No. 25-2336, 2026 WL 2364544, at *1 (9th Cir. Aug. 14, 2026) (affirming the ALJ's discounting of the claimant's testimony based in part on his "consider[ation of] . . . exercise activities").

Plaintiff agrees that the ALJ found his testimony inconsistent with his reported activities, including "coaching, exercising [regularly, and] working as a personal trainer." (Pl.'s Opening Br. at 12-14.) Plaintiff argues, however, that the ALJ failed adequately to explain how such activities conflicted with specific parts of his testimony. (*See id.* at 14, claiming that the ALJ "made only passing references" to these activities "without further explanation"). Plaintiff also

suggests that the ALJ failed to develop a record regarding whether he engaged in these activities for "more than a short time" or in a "manner that was inconsistent his allegations," as opposed, for example, to "simply develop[ing]" a game or "workout plan" or providing "verbal cues" to others. (*Id.* at 13-14.)

Plaintiff relies in part on the Ninth Circuit's decision in *Trevizo*. (*Id.* at 13-14, citing *Trevizo*, 871 F.3d at 676.) *Trevizo* is instructive but the facts here are distinguishable. In *Trevizo*, the sixty-five-year-old claimant had not worked in nine years and lived with her husband, eighteen-year-old grandson who helped her with housework, and two young, adopted children. 871 F.3d at 668, 673. The Ninth Circuit held that the ALJ erred in discounting a physician's opinion and the claimant's testimony on the ground that they conflicted with the claimant's childcare activities. *Id.* at 676, 682. Emphasizing that the "mere fact that [a claimant] cares for small children does not [on its face] constitute an adequately specific conflict with her reported limitations," the Ninth Circuit explained that there was "almost no information in the record about [the claimant's] childcare activities," let alone "details as to what [the claimant's] regular childcare activities involved." *Id.* The Ninth Circuit added that the "only childcare responsibilities identified at the hearing were one-off events, such as taking the children to the doctor or attending hearings (often by phone)" and that the claimant's childcare responsibilities "appear[ed] to . . . permit her to rest, take naps, and shower repeatedly throughout the day, all of which would be impossible at a traditional full-time job." *Id.* The Ninth Circuit further explained that the ALJ failed to "develop a record regarding the extent to which and the frequency with which [the claimant] picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations" and failed to "inquire into

whether [she] cared for the children alone or with the [help] of her grandchildren or other family members." *Id.* at 676.

*Trevizo* is distinguishable. Unlike the ALJ in *Trevizo*, the ALJ here identified direct conflicts between Plaintiff's reported activities and claimed limitations. *See Prasad v. Bisignano*, No. 25-2727, 2026 WL 2241792, at *1 (9th Cir. Aug. 4, 2026) (noting that the "ALJ identified a direct conflict between [the claimant's] testimony that he could not walk two blocks and his report that he walked a mile each day and felt 'fresh' afterward" (quoting *Smartt*, 53 F.4th at 499)).

As discussed, a court may not second-guess an ALJ's reasonable interpretation of the record. The ALJ offered a reasonable interpretation here. (*See* Tr. 4359-60, interpreting the record and making findings; *cf. id.* at 4100, April 1, 2022, Plaintiff, who recently went "through a very bad breakup" after "six [break-ups] in the past 100 days," reported that he "stopped using [m]eth and 'never plan[ned] to use it again,'" his "life [was] relegated to the gym and riding his three-wheeler," and he was "eating healthy and sleeping effectively"; *id.* at 4041-42, January 6, 2022, Plaintiff's hobbies and activities were "[w]eight training," "[p]rojects," and "family stuff" and he exercised at a "[m]oderate to heavy" intensity level three times per week and experienced no "reoccurrences" of partial dislocations because he had been "working hard in the gym to stabilize his shoulders"; *id.* at 3906, October 29, 2021, Plaintiff was "[e]xercis[ing] at [the] gym" and "stay[ing] very active throughout the day"; *id.* at 899, June 7, 2021, Plaintiff served as a "personal trainer at a local gym," "perform[ed] cardio exercise and weightlifting at the gym," and "experienced some healthy weight loss"; *id.* at 3215, January 21, 2021, Plaintiff "[g]oes to the gym [every] day [that] it is open"; *id.* at 3289, April 1, 2020, Plaintiff had been "treating [his] back pain with gym exercises," which led to a reduction and "improvement" in his pain; *id.* at

540, February 12, 2020, Plaintiff "work[ed] out regularly," exercised two to four times a week, and preferred "weightlifting . . . at a fast pace"; *id.* at 546, February 10, 2020, Plaintiff was "doing all he can to be healthy," including "working out diligently" two to three times per week and "mak[ing] lifestyle changes"; *id.* at 548, January 13, 2020, Plaintiff was "coaching during football season," staying "involved in out of the house activities," engaging in "regular work out[s]," and losing weight; *id.* at 2371, July 12, 2019, Plaintiff complained of a temporary "skin reaction from working out at the gym"; *id.* at 2516, October 9, 2018, Plaintiff reported incidents in which he "finished working out at the gym" and discovered "'pockets of sweat/blisters' on his body 'mainly on the muscle groups that he ha[d] been working [that day,] such as his arms and back'").[3]

Plaintiff disagrees with the ALJ's interpretation of his reports and testimony. (*See* Pl.'s Opening Br. at 12-14.) Plaintiff, however, "simply offer[s] an alternative interpretation of the record[, which] does not demonstrate the ALJ committed reversible error." *Jarrett v. O'Malley*, No. 23-3565, 2024 WL 4707890, at *1 (9th Cir. Nov. 7, 2024) (first citing *Smartt*, 53 F.4th at

[3] Although Plaintiff stated in April 2021 that he "stopped using [m]eth and 'never plan[ned] to use it again'" (*see* Tr. 4100), his providers noted that he continued to do so. (*See id.* at 4309, 4312, 4316-17, December 29, 2022, Plaintiff was "using methamphetamine regularly" and "cannabis regularly" and "unwilling" to "reduce daily cannabis or meth use"; *id.* at 3023, June 14, 2021, Plaintiff "used [m]eth over the weekend" and a licensed clinical social worker recommended "attempting to go back to the gym to work out" because it was a "healthy coping skill"; *see also id.* at 4312, December 29, 2022, finding that Plaintiff's regular use of "[m]eth [was] clearly exacerbating [his paranoid personality disorder] symptoms of increased agitation, irritability, aggression as well as insomnia and, possibly, [hypertension]"; *id.* at 4310-11, recounting that on October 6, 2021, Plaintiff's psychiatrist noted that he was "medicating with meth," she found it "[d]ifficult to obtain diagnostic clarification" of his diagnosis of adult attention-deficit hyperactivity disorder ("ADHD"), she "would not recommend stimulant medication in any event," and she found it notable that he was "successful in work and military, as well as educational pursuits without medications," he was "not working or pursuing an education," and he "actively us[ed] an illegal substance, which ma[de] diagnosis difficult at th[at] time").

494; and then citing *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008)).

In sum, the Court declines to "second-guess" the ALJ's "reasonable determination based on specific, clear, and convincing evidence that [Plaintiff's reported] activities were inconsistent with the alleged severity of [his] limitations." *Smartt*, 53 F.4th at 499-500 (quoting *Rollins*, 261 F.3d at 857).

### 3. Conflicting Medical Evidence

The ALJ also discounted Plaintiff's testimony based on conflicting medical evidence. (Tr. 4359-60.)

Under Ninth Circuit precedent, an ALJ may discount a claimant's symptom testimony based on conflicting medical evidence. In *Smartt*, for example, the Ninth Circuit held that the ALJ "properly discounted" the claimant's "subjective pain testimony and self-reported limitations," in part because the "objective medical evidence was inconsistent with those limitations." 53 F.4th at 496-97. The Ninth Circuit explained that "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Id.* at 499 (quoting *Carmickle*, 533 F.3d at 1161).

Similarly, an ALJ does not err in discounting a claimant's testimony based in part on "generally . . . normal mental status examinations," even if he can "point[] to other mental status examinations that tend to corroborate [his] testimony." *Jarrett*, 2024 WL 4707890, at *1 (making a nearly identical finding and holding that the claimant failed to "demonstrate the ALJ committed reversible error" (first citing *Smartt*, 53 F.4th at 494; and then citing *Carmickle*, 533 F.3d at 1164)).

The parties dispute whether the ALJ appropriately discounted Plaintiff's symptom testimony based on conflicting medical evidence. (*See* Def.'s Br. at 7-10, citing the ALJ's

supporting examples and noting that Plaintiff "disputes" the Commissioner's argument that the ALJ properly discounted his testimony based on his "activities" and conflicting "objective evidence" (first citing Tr. 375, 448, 455, 4087, 4359-61; and then citing Pl.'s Opening Br. at 8-16)). Plaintiff argues that the ALJ's supporting example are "not reliable indicators of the issues that [Plaintiff] would have interacting with others in a work setting." (Pl.'s Opening Br. at 7.)

Plaintiff also cites his own supporting examples of instances in which he was "easily aggravated by what he saw as the incompetence of others." (*See id.* at 8-9, citing 2021-2022 treatment notes at Tr. 360, 369, 378, 447, 494, 897, 3017, 3969, 3971, 3981, 3989, 4104, 7465). Plaintiff argues that his examples undermine the ALJ's finding that the "record contained few documented instances of social interaction difficulties" and demonstrate that the ALJ's reliance on conflicting medical evidence was "not supported by substantial evidence when the record is considered as a whole." (*Id.* at 9, citing *Glanden v. Kijakazi*, 86 F.4th 838, 847 (9th Cir. 2023)).

Plaintiff fails to demonstrate that the ALJ committed reversible error in partially discounting his testimony based on conflicting medical evidence. Plaintiff's discussion of supporting examples amount to a reasonable interpretation of the record, but so too were the examples upon which the ALJ relied.

Also noteworthy is that the ALJ found that the "evidence overall" reflected that Plaintiff has the "skills to manage himself sufficiently to sustain simple, low-stress work with little social interaction" and "skills to interact appropriately when necessary," as he demonstrated during an encounter with his social worker. (*See* Tr. 4360-61, Plaintiff was "quick to apologize for calling her 'honey'" and "stated that he meant no disrespect" (citing Ex. 3F at 147, i.e., Tr. 448)). These findings are significant and relevant to the parties' dispute about whether the ALJ discounted the alleged severity of Plaintiff's physical and mental limitations based on his reported activities.

(*See* Def.'s Br. at 8-9; *cf.* Pl.'s Reply Br. at 6, arguing that the Commissioner "misrepresents the ALJ's reasoning in framing the argument in this manner" and the Court should not consider the Commissioner's "efforts to extend th[e ALJ's] reasoning beyond what is clearly set out in the decision").

Considering the ALJ's above-referenced reliance on what the "evidence overall show[ed]" and findings at steps two and three that Plaintiff engaged in activities inconsistent with the alleged severity of his mental impairments (*see* Tr. 4356-58, 4361), it is reasonable to infer that the ALJ concluded that Plaintiff's reported activities conflicted with the alleged severity of both his mental and physical impairments. Even assuming the ALJ failed to draw the necessary link between Plaintiff's activities and mental impairments, however, Plaintiff's treatment providers' notes regarding his activities (i.e., training clients, serving as a football coach, frequenting public gyms, etc.) constitute additional support for a ground on which the ALJ relied to discount Plaintiff's testimony (i.e., unremarkable findings and observations about Plaintiff's presentation on mental exam). Thus, Plaintiff has not demonstrated reversible error. *See* *Fenton v. Colvin*, No. 6:14-cv-00350-SI, 2015 WL 3464072, at *1 (D. Or. June 1, 2015) (explaining that circuit precedent provides that a court is "not permitted to affirm the Commissioner on a ground upon which the Commissioner did not rely," but is "permitted to consider additional support for a ground on which the ALJ relied" (citing *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1005 n.3 (9th Cir. 2006))).

**4. Conclusion**

For these reasons, the Court concludes that the ALJ did not commit reversible error in discounting Plaintiff's symptom testimony. *See* *Brokaw v. Bisignano*, No. 24-6710, 2025 WL 3158801, at *2 (9th Cir. Nov. 12, 2025) ("Because the ALJ's rationale is clear enough that it has the power to convince, the ALJ's citation of [conflicting] medical records and daily activities

provided sufficiently specific, clear, and convincing reasons for discounting her subjective testimony[.]") (citation modified); *see also Burke v. Bisignano*, No. 24-5863, 2025 WL 3764054, at *1 (9th Cir. Dec. 30, 2025) (holding that the ALJ satisfied the clear and convincing reasons standard and explaining that "an ALJ may not discount a claimant's subjective symptom testimony by relying solely on the absence of corroborating objective medical evidence" (citing *Ferguson v. O'Malley*, 95 F.4th 1194, 1200 (9th Cir. 2024)); *cf. Sims v. Berryhill*, 704 F. App'x 703, 704 (9th Cir. 2017) (affirming the ALJ's discounting of the claimant's testimony because the ALJ "provided at least one clear and convincing reason supported by substantial evidence for rejecting [the] testimony as not credible").

## II. REMEDY

The parties agree—and the Court finds—that the ALJ erred in discounting Drs. Friedburg and Santana's opinions. (*See* Def.'s Br. at 1, 3-7.) Thus, the parties' remaining dispute centers on whether the Court should remand for further proceedings or an award of benefits.

### A. Applicable Law

"Congress has granted courts some . . . flexibility in [42 U.S.C.] § 405(g) 'to reverse or modify an administrative decision without remanding the case for further proceedings.'" *Treichler*, 775 F.3d at 1099 (quoting *Harman v. Apfel*, 211 F.3d 1172, 1177-78 (9th Cir. 2000)). Thus, courts may remand for benefits in "appropriate circumstances." *Id.* (quoting *Garrison*, 759 F.3d at 1019).

Three "prerequisites" must be satisfied before a court may remand for benefits. *See Dominguez v. Colvin*, 808 F.3d 403, 407-08 (9th Cir. 2017) (explaining that Ninth Circuit "case law precludes a district court from remanding a case for an award of benefits unless [three] prerequisites are met" (citing *Burrell*, 775 F.3d at 1141)). The Ninth Circuit refers to this three-part legal framework as the "credit-as-true" (or "*Varney*") rule. *See Treichler*, 775 F.3d at 1100

("[The Ninth Circuit] distilled the *Varney* rule (sometimes referred to as the 'credit-as-true' rule) into three [prerequisites]."); *Garrison*, 759 F.3d at 999, 1019-23 (applying the "credit-as-true" rule).

The first credit-as-true prerequisite is that the ALJ "failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Leon v. Berryhill*, 880 F.3d 1041, 1044-45 (9th Cir. 2018) (quoting *Garrison*, 759 F.3d at 1020). The second prerequisite is that there are no outstanding issues that must be resolved before a disability determination can be made and further proceedings would serve no useful purpose. *See id.* at 1045 ("[Second], we determine 'whether there are outstanding issues that must be resolved before a disability determination can be made, and whether further administrative proceedings would be useful.'" (citation modified) (quoting *Treichler*, 775 F.3d at 1101)). The third prerequisite is that "'the ALJ would be required to find the claimant disabled on remand' if the 'improperly discredited evidence were credited as true.'" *Dominguez*, 808 F.3d at 407 (quoting *Burrell*, 775 F.3d at 1141).

**B. Analysis**

The Court finds it appropriate to exercise its discretion to remand this case for further proceedings.

As discussed above, a district court may exercise its discretion to remand a claimant's case for "further proceedings if enhancement of the record would be useful." *Fahtima R. v. Comm'r of Soc. Sec.*, No. 18-5970-MJP, 2019 WL 2022461, at *4 (W.D. Wash. May 8, 2019) (citing *Harman*, 211 F.3d at 1178). In *Fahtima R.*, for example, the court observed that "the record show[ed] conflicts between unchallenged state agency doctor opinions and [a physician's improperly discredited] opinions that the ALJ [needed to] address[.]" *Id.* The court therefore remanded the case for further proceedings because "enhancement of the record would be useful."

*Id.* (citation omitted); *see also Graham v. Colvin*, No. 14-5311, 2015 WL 509824, at *5-8 (W.D. Wash. Feb. 6, 2015) (remanding for further proceedings and explaining that although the ALJ erred in discounting the claimant's testimony, the claimant did not challenge certain conflicting medical opinions and thus there were outstanding issues in the record about the extent of the claimant's limitations).

Similarly here, the Court finds that the three credit-as-true prerequisites are not satisfied. The parties agree that the ALJ erred in evaluating Drs. Friedburg and Santana's opinions, but the ALJ provided clear and convincing reasons, supported by substantial evidence, for discounting Plaintiff's testimony. Accordingly, further proceedings would be useful because there are unresolved factual conflicts that the ALJ must resolve before he can determine whether Plaintiff is disabled. Further, the Court finds that the record evidence described above raises sufficient doubt about whether Plaintiff is disabled. *See Garrison*, 759 F.3d at 1021 (recognizing that courts retain the "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled").

For these reasons, the Court remands for further administrative proceedings. *See Nicholas W. v. Saul*, No. 3:19-cv-01597-SB, 2021 WL 1612294, at *3-12 (D. Or. Apr. 26, 2021) (finding that the ALJ erred in discounting the claimant's testimony but did not err in discounting lay witness testimony and medical opinion evidence and therefore remanding for further proceedings based on unresolved conflicts in the record).

///

///

///

///

## CONCLUSION

For the reasons stated, Court REVERSES the Commissioner's decision and REMANDS for further proceedings.

**IT IS SO ORDERED.**

DATED this 14th day of September, 2026.

HON. STACIE F. BECKERMAN
United States Magistrate Judge